## WINKLER, Plaintiff-Appellant, v. COLUMBUS (City), Defendant-Appellee

Ohio Appeals, Second District, Franklin County.

No. 3932.   Decided February 5, 1947.

James F. Henderson and Russ Bothwell, Columbus for plaintiff-appellant.

Richard W. Gordon, City Attorney, Hugh Martin and Edward J. Cox, Asst. City Attorneys, Columbus, for defendant-appellee.

## OPINION

By HORNBECK, P.J.

This is an appeal from a judgment for the defendant upon a directed verdict at the conclusion of plaintiff's case. A number of errors are assigned, but the single question presented is, did the Court err in holding that upon the evidence adduced by the plaintiff, she was not entitled to go to the jury. This involves two propositions, the first, was there probative evidence of the negligence of the defendant; if so, does the contributory negligence of the plaintiff appear as a matter of law?

The trial judge in an extended opinion given when he sustained the motion, stated his view of the law upon the facts appearing and counsel for the parties have presented briefs in support of and against the action of the trial judge.

It is urged that there is variance between the allegations of the second amended petition and the proof; that it does not appear that the plaintiff was injured by reason of the defect asserted nor in the manner set up in her petition, and finally, if any negligence was chargeable to the City that there is no rational hypothesis upon which reasonable minds could differ, as to the negligence of the plaintiff contributing as a proximate cause to her injury.

On the other hand, the plaintiff contends that the trial judge resolved every factual dispute against the direct statements and the permissible inferences to be drawn from her testimony, whereas the indulgence should have been in her favor. There is also discussion whether or not the defect which it appears caused plaintiff's injuries was patent or latent and the City asserts that it was a latent defect of the existence of which, it had no actual knowledge and that it was not charged with constructive knowledge.

We examine the pleadings together with factual development as they relate to the errors assigned.

In the second amended petition upon which issues were eventually joined and the parties went to trial, this was the charge: "There existed a raised and cracked place in said sidewalk, about six to seven inches high"; that "said raised sidewalk was a nuisance to those using said sidewalk at said time and place and in the exercise of ordinary care".

The further averment is that "plaintiff further says that the proximate result of said raise in said sidewalk was that she

was injured in the following particulars, * *". The plaintiff's testimony developed at page 27, "I walked on the sidewalk where I stepped on the sidewalk it seemed like my foot slipped and I got caught and it throwed me and when I stepped on the sidewalk it tilted and caught my toe".

It is urged that the testimony of the plaintiff is not in accord with her petition as to the cause nor the manner of her injury. We do not support this conclusion. It is manifest that in defining what plaintiff claimed to be the dangerous character of the sidewalk she said that it was raised and had a cracked place in it. If it had a cracked place, as alleged, it was nothing unusual or at variance with the averment that the place where it was cracked might either break or being broken upon plaintiff's stepping upon it, tip and cause her to fall. But it is said that there was no notice to the City of this condition.

There is support for the contention that as to the identical defect, namely, the broken cement as it broke at the identical place where plaintiff fell, the City did not have constructive notice. The notice which the City had was established by the testimony of the witness, Edward Rech, who, at page 11, said: "At this point there was a hump on the sidewalk, a three or four inch raise, just south of this block. Then for two or three blocks the pavement had sunk, it had fallen down. In fact there was a difference of about three or four inches". At another place he says: "I remember this raised section was level and two or three sections immediately south had sunken down. There was an abrupt,—because three or four sections immediately south of this point, those sections had sunken, and this one place had not 'fell' down or settled down, that caused an abrupt raise there or drop whichever way you look at it".

The case of **Village of Shelby v Claggett, 46 Oh St 549,** is relied upon by the City as establishing its contention that there was no notice to the City of the defect, but appellant insists that the facts in this case are so different that it is of no authoritative assistance here. What has apparently failed of notice in this case is that, notwithstanding the finding of the Court as to what facts were necessary under the law to charge the City with notice of defect in the street, it held in the very last sentence of the opinion at page 557 thereof,

"We think the question, whether or not the village had notice of the defect in dispute, should have been submitted to the jury upon all the evidence in the case."

The syllabus 4 (a) also defines the essentials of notice which may be given application here:

"4 (a). In an action against a municipal corporation, to charge it with liability to one injured by a defective sidewalk, it cannot, as matter of law, be charged with notice of the defect that caused the injury, from the fact, merely that it knew of the existence of a general defect in the same walk. To constitute knowledge of the general defect, notice of the particular one, they must at least be of the same general character, or the latter a usual concomitant of the former."

May it be said here that a break in the sidewalk which caused plaintiff to fall was neither of the same general character nor concomitant with the defect as described by the witness Rech? We think not, as a matter of law. In our judgment it presents a factual question which should have been submitted to the jury under proper instructions.

In the cited case the defect of which complaint was made related to loose boards in a sidewalk, while the notice to the City pertained only to a warped or bent condition of the boards. Notwithstanding this manifest difference in the actual defect which caused plaintiff's injury and that of which the City was apprised, the Court held the question whether or not the City was put on notice as to the defect alleged was for the jury. That is the situation presented here.

It was sought to develop from plaintiff more in detail the condition of the sidewalk where she fell by her observation made the next morning following the accident. Upon objection this testimony was not permitted for the reason that it did not appear that there had been no change in the condition of the walk. Upon the record the trial judge is technically correct in the ruling. However, this evidence would be helpful if it reasonably appears, which is probable, that there had been no change in the general condition of the sidewalk at the place where the plaintiff was injured from the time of her fall until the next day when she made a closer and more searching examination of the physical conditions.

Examining the plaintiff's testimony as it appears on paper we do not find that it was contradictory nor inconsistent. True, on direct examination, she said that she had not, prior to the date of her injury, walked on the sidewalk where she fell, and that she did not know of the specific condition which caused her to fall until after the occurrence. On cross-examination she readily admitted that she knew that the sidewalk generally was in a state of disrepair, but stated that the sidewalk on the other side of the street was so much worse that ordinarily she walked in the street, but that on the day of the occurrence in question she walked on the west sidewalk because of automobiles moving in Reinhard Street from Jaeger Street.

The plaintiff said that once a week for many years she had been going downtown to market and returning to her home either by bus on Reinhard Street or by street car on Whittier. Her home was five or six lots east of Jaeger Street on Whittier and when she came home by bus she could reach Whittier by either the east or west sidewalk along Jaeger Street between Reinhard and Whittier or, as she said she generally did, by walking in the street along side either the east or the west sidewalk. She is definite to the effect that at no time prior to the time of her injury had she walked on the sidewalk on the west side of Jaeger Street at the place where she fell. On cross-examination, however, she very readily and completely testified as to her knowledge of conditions along Jaeger Street and as to both sidewalks.

It appeared that at the time of and immediately preceding plaintiff's fall she was carrying in her left arm a box about 15 inches wide, 25 inches long and 2 to 3 inches deep and in her right hand she had a shopping bag in which were a number of articles. At page 64 of the record:

"Q. What were you looking at? (As she walked down the street).

A. Nothing; straight ahead.

Q. There was no obstruction to your view of any kind?

A. No, sir.

Q. You saw this particular defect then before you got to it, didn't you?

A. I didn't see it so good, then I seen it the next day; when I stepped on it it tilted, it caught me so quick I didn't know; I tried to catch myself.

Q. But the defect you speak of about tilting was not something that could be seen, was it?

A. No, I couldn't see it.

Q. Well, nobody could tell by looking, glancing at the sidewalk that the sidewalk would tilt?

A. I don't know.

Q. You couldn't tell by looking at it? (Meaning before and at the time she fell.)

A. No. I couldn't."

And at page 65:

"Q. So that when you approached this place at the time of the alleged fall, you did know and did see that it was the

place that had been raised up, didn't you, before you reached it?

A. Yes, I seen it, it was bad, but I didn't know it was that way, when I tried to step over it it caught me.

Q. You could see it was in bad condition, you could see the defect as far as it showed, couldn't you?

A. I could see some of it, yes sir."

In Brown v Chillicothe (Ia), 98 N. W. 502, it was held that where a traveler on a sidewalk

"was attempting to step around the hole in the walk, which was occasioned by a piece being broken out of one of the four planks, of which it was constructed, his foot slipped, and he was thus caused to fall. It was plainly for the jury to say whether his slipping and falling was the proximate result of the defect."

From the plaintiff's testimony the inferences are drawn that she knew the condition of the sidewalk which caused her to fall and that walking upon it as she did with the knowledge that she had she was chargeable with contributory negligence as a matter of law.

The obligation of the trial judge as to the effect to be given the testimony upon a motion to direct a verdict is found in **Pope, Admx. v Mudge, 108 Oh St 192,** the syllabus of which is as follows:

"1. It is error for the court to direct a verdict against the plaintiff, where, by giving to the evidence the most favorable interpretation toward him which any of the evidence will reasonably warrant, there is some evidence tending to support the allegations of the petition." (This probably should now be modified to conform with **Hamden Lodge, I. O. O. F. v Ohio Fuel Gas Co., 127 Oh St 469.**)

"2. If, in ruling upon a motion to direct a verdict, the court is required to detect the truth from conflicting evidence of the same or different witnesses, the motion should be overruled."

The general rule as to the obligation of the plaintiff here is set out in **Darst v Columbus, 25 Abs 397,** citing an annota-

tion to Gryning v Philadelphia (Pa.) 13 A. L. R. 79; and a notation from 43 C. J. 1082:

"The mere fact that one using a street or public way had knowledge of the defect or obstruction by reason of which he was injured does not, as a matter of law, constitute contributory negligence precluding a recovery, if in view of such knowledge of the defect or obstruction by reason of which he the circumstances."

In **Highway Construction Co. v Sorna, 122 Oh St 258,** it is said:

"One using a sidewalk, crosswalk, street or highway, which ordinary and reasonable care would inform him was dangerous, takes the risk of such injuries as may result to him by open and apparent defects, such as his observation ought to have detected and avoided."

The Court held that whether or not contributory negligence appeared was, under the facts of that case, for the jury. In the instant case the knowledge of the plaintiff as to the defect which caused her injuries was secured only by general observation when she had walked in the street alongside the sidewalk and her opportunity to see it as she walked on it immediately before she fell. It is certainly a permissible inference from her testimony as a whole that she only had a most general knowledge of the condition of the street and that at no time did she have actual knowledge of the identical defect which caused her injuries.

On the question of the knowledge of danger, the assumption of which will prevent recovery on the part of plaintiff, we refer to Railway Company v Godwin, 12 O. C. D. 538, and particularly the 9th, 10th and 11th propositions of the syllabus.

In **Adams v City of Zanesville, 14 Oh Ap 53,** it was held that where it appeared that plaintiff was fully aware of the condition of the walk and attempted to pass over it regardless of the danger, she may not recover. But note that as a prerequisite to this holding it was said that the plaintiff must be fully aware of the condition of the walk.

To like effect, **City of Cincinnati v Hiles, 3 Oh Ap 319;** and Herig, et al. v City of Cleveland, 16 O. C. C. (N. S.) 209.

As to the factual development which will permit the trial judge to conclude that a party is chargeable with contributory negligence as a matter of law, see the second syllabus of **The Cleveland, Cincinnati, Chicago & St Louis Railway Company v Lee, Admr., 111 Oh St 391.**

In **Youngstown v Trim, 11 Abs 654,** the Court held in the first syllabus:

"Where the evidence shows the plaintiff was injured by stepping into a depression of which the City should have known, that the depression was visible but the plaintiff paid no attention to the pavement, the question of contributory negligence is for the jury."

The Court relies on **Gibbs v Village of Girard, 88 Oh St 34.**

An authority in point upon one development of the testimony is that of **Cincinnati v Green, 34 O L R 25,** where it is said:

"It is a question for jury to determine whether pedestrian is guilty of contributory negligence, if pedestrian selects way known to be defective when such way selected is used generally by the public, and an alternative route is also known to be dangerous or long and difficult." Following **Highway Construction Co. v Sorna, 122 Oh St 258.**

In Cincinnati v Green, the plaintiff admitted knowledge of the general unsafe condition of the sidewalk on which she was walking when injured, which knowledge was obtained by walking over the identical sidewalk twice a day for a period of almost seven years. It also appeared that she had knowledge of the block which caused her fall, being titled above the adjoining block, but that she had taken no particular notice thereof. It was also developed that there was a walk on the other side of the street. That on which the plaintiff fell was on the south side and that she took the south walk because of her opinion that the north walk was more dangerous. Upon these facts the Court held that whether her walking on the south side at the time of her injury was contributory negligence was a question for the jury.

The Court quotes with approval from McQuillan on Municipal Corporations (2d Ed.) Vol. 7 p. 283 (263):

"Where the traveler has knowledge of a defect in the highway, it does not follow, as a legal consequence, that he must,

under all circumstances, avoid the use of it, and reach his destination in some other way. It is a question of the character and imminency of the danger, and the difficulty or inconvenience of avoiding it. If the danger was serious and imminent it might be the traveler's duty, as a matter of law, to avoid it at any inconvenience. If, however, the danger was trifling, and the inconvenience of taking another way was so great that an ordinarily prudent man would not subject himself to it, it would not be negligence not to do so. Between these extremes are the countless gradations of danger and ways of avoiding it, depending on the circumstances."

We have discussed cases which control every aspect of the factual development here.

Giving to the plaintiff's testimony the most favorable intendment in her behalf which is required upon a motion for directed verdict, it supports each and every element of her case and it should have been submitted to the jury.

Judgment reversed and cause remanded.

WISEMAN and MILLER, JJ, concur.